

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

MEM
F.#2015R00190

*610 Federal Plaza
Central Islip, New York 11722-4454*

October 31, 2022

By Hand and ECF

The Honorable Joan M. Azrack
Senior United States District Judge
United States District Court
Eastern District of New York
1020 Federal Plaza
Central Islip, New York 11722

   Re: United States v. John Quadrino
      Criminal Docket No. 17-153 (JMA)

Dear Judge Azrack:

  The government writes in connection with the sentencing of the defendant John Quadrino, which is scheduled for November 10, 2022.

  For approximately five years, the defendant the owner/operator of Princess Cut Industries, Inc., Sassy Jewelry Buyers, Inc., and Golden Glitter Trading, Inc. (collectively referred to as the "Gold Purchasing Companies"), represented to potential investors that the Gold Purchasing Companies were involved in the sale of gold, jewelry and diamonds to refineries and jewelers.  The defendant asked investors to invest large sums of money for fixed periods of time in exchange for a guaranteed, fixed rate of return at the end of the agreed upon time period.  Contrary to the representations made by the defendant to investors, the defendant never actually purchased gold, jewelry or diamonds in any significant quantities.  Instead, he systematically engaged in a classic Ponzi scheme over the course of five years, returning investor principal and interest from the investor capital of other victims.  As a result, his victims suffered total losses of approximately $3.3 million.  The defendant used investor capital to, among other things, issue checks to himself and to pay for his personal gambling expenses. For the reasons set forth below, a fair and just sentence is a sentence within the applicable Guidelines range of 37 to 46 months.

PRESENTENCE INVESTIGATION REPORT

The government submits that the calculations contained in its letter dated October 26, 2022 letter to Your Honor are the appropriate computations under the United States Sentencing Guidelines. ECF Doc. Ent. 76.

\* \* \*

In sum, the defendant's adjusted offense level is 20, resulting in a Guidelines range of imprisonment of 37 to 46 months.

ARGUMENT

THE SECTION 3553(A) FACTORS WEIGH TOWARDS A GUIDELINES SENTENCE

As the Court knows, the advisory Guidelines are merely one step in the process of fashioning an appropriate sentence. The Court must consider the factors listed in 18 U.S.C. § 3553(a) in determining the defendant's sentence. Gall v. United States, 552 S.Ct. 586, 596 (2007). That section directs a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the need for the sentence imposed:

> (A)  to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Here, the extremely serious nature of the offense, the need for deterrence, the history and characteristics of the defendant, the need to promote respect for the law and to provide just punishment warrants a Guidelines sentence.

  A. The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

Section 3553(a) requires the Court to consider "the nature and circumstances of the offense" and to impose a sentence that "reflect[s] the seriousness of the offense." 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A). Consideration of those factors strongly suggest that a strict sentence is appropriate.

The seriousness of the offense speaks for itself. In total, investors lost approximately $3.3 million. Loss does not end the inquiry. Indeed, all the other objective metrics demand a significant sentence.

First, the defendant's role in the fraud demands a Guidelines sentence. He was the mastermind behind the entire fraud. He started the fraud. He solicited investments. And he repeatedly lied to the investors.

Second, the length of the fraud further warrants a substantial sentence. The defendant committed the fraud over the course of five years. The defendant did not have a one time lapse in judgment. He made a daily decision to deceive investors for almost five years.

Third, the defendant told many lies during his fraudulent scheme. For example, he repeatedly told victims that Princess Cut Industries, Inc., had an account balance of $6 million. (PSR ¶ 9). In an effort to convince his victims that the account balance was what he purported he produced fraudulent Wells Fargo statements. (Id.) In addition, he also produced fraudulent documents falsely representing that he purchased shipments of gold and jewelry worth more than $7.5 million. (Id.) Once the defendant obtained the victim's investments, he would use their monies for a completely different, unapproved purpose, including to pay his gambling debts, and, to pay himself. (PSR ¶ 6.)

Fourth, another factor demonstrating the seriousness of the fraud warranting a significant sentence is the type of fraud this was. Unlike an accounting fraud, the defendant's fraud was very personal. The defendant had direct contact with his victims. He talked to them in-person and over the telephone. He built trust with them and then exploited that trust for personal gain. The defendant's crimes were reprehensible.

Fifth, the defendant did not simply cause financial harm, he also caused intangible consequences that are far less obvious. Indeed, victims explained to the government how the defendant caused them to lose confidence in themselves and their own judgment. They blame themselves for falling victim to the defendant's lies. And they have explained to us in painstaking detail how this horrible experience has caused them to be less trusting of others. These intangible consequences are unfortunate and further demonstrate just how serious the instant crimes were.

And last but certainly not least, the harm that the defendant caused to the victims is real and devastating. The impacted victims are real people whose lives were forever changed by the defendant's crime. While there is, of course, a difference between the loss of human life and financial loss, that does not mean financial crimes are not serious. Financial crimes affect victims in very real ways–ways that have enormous effects on their daily lives. During the course of this investigation, the government talked to the victims and witnessed first-hand how the defendant's conduct irreparably harmed and continues to harm their lives to this very day. The defendant's callous conduct caused tremendous anguish.

That being said, the government, after carefully considering the Guidelines and all the Section 3553(a) factors, is asking the Court to impose a Guidelines sentence.

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The next factor that the Court must consider is the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). This factor weighs in favor of the imposition of a significant term of imprisonment. Despite that the defendant has no significant criminal history, the defendant's age when he committed the instant crime counsels against a reduced sentence. Indeed, he was 46 years-old when he started defrauding investors; he was not a child.

The defendant's positive upbringing also warrants a significant sentence. As the defendant explained, he experienced a loving family home where traditional family values were taught and lived. The defendant, unlike so many defendants that appear for sentencing, was raised by two loving parents in a home devoid of physical or verbal abuse. The defendant did not suffer from mental health or substance abuse problems that led him to commit this fraud. The defendant had every opportunity to lead a productive, law abiding life: he had a positive upbringing and a supportive, loving family. Despite all of this, he chose to defraud unsuspecting victims. And he should be punished accordingly. What makes the defendant's criminal conduct so appalling is that he learned work ethic from his parents, and he witnessed first-hand how hard his parents had to work to save money to purchase a home and to provide for him and his siblings. Instead of following his parents' path, he chose a different path, an easier path. A path where he victimized people who, like his parents, worked long hours to provide a better life for their families.

The defendant is not someone with high character. Rather, years of objective evidence demonstrates that he is a calculating, dishonest person, and deserves an extremely significant sentence.

C. The Need to Promote Respect for the Law and to Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))

The next factor that the Court must consider is "the need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). A sentence below the Guidelines will not promote respect for the law or provide just punishment. In fact, it will do the opposite. Cases of this scale require significant custodial sentences. These sentences are among the best ways in which to communicate to the public that they will be protected and that the guilty will be punished.

Similarly, for a defendant to commit a crime of this magnitude, a sentence below the Guidelines would serve to erode respect for the law. Cases do not get much bigger and financial crimes do not get more brazen than the defendant's crimes. If the defendant walks away with a non-incarceratory sentence, an unfortunate message would be sent that these crimes are unworthy of significant punishment.

D. The Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

Section 3553(a)(2)(B) further requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." Id. This factor has two components: general and specific deterrence. Both factors point to the need for the imposition of a significant sentence here. As mentioned in the previous section, the Court has a responsibility to send clear, unambiguous messages that financial crimes will be punished. If that message is muted, criminals will quickly learn that blatant multi-million dollar fraud schemes do not merit significant prison sentences on Long Island. That message will have a disastrous effect upon our Long Island community.

White collar criminals are among the most responsive to the general deterrence of a significant sentence. Unlike many of the criminals who pass through this Court, white collar criminals or those considering committing financial crimes are generally well-educated, have access to and are more acutely aware of information about white collar sentences. A significant sentence for the defendant can help protect the public by providing strong general deterrence to the next person considering participating in fraud. There is a greater need for general deterrence for fraud schemes than other crimes, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted)); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

Moreover, the defendant poses a recidivist risk. Indeed, he was arrested September 12, 2022 by the Lynbrook Police Department. The defendant was charged under New York State Penal Law with Grand Larceny in the Second Degree, a felony. The complaint alleges the defendant stole $61,968.34 utilizing at least one fraudulent check. Thus, specific deterrence counsels toward a significant sentence in this case. See 18 U.S.C. § 3553(a)(2)(C).

A prison sentence within the Guidelines is therefore necessary not only to deter would-be fraudsters in general, but also to specifically deter the defendant from committing further crimes.

E. The Kinds of Sentences Available and the Sentencing Range (18 U.S.C. §§ 3553(a)(3), (4) & (5))

The Court is fully aware of all of the available sentencing options. It is no accident that the Guidelines counsel toward such a significant sentence. Those Guidelines serve as the reservoir for the collective sentencing wisdom of the entire nation of federal jurists. That wisdom, looking at the enormous scope of the instant crimes, counsels toward a very long custodial sentence. Ultimately, each sentence must be imposed according to the law and the individual conscience of the judge. However, these factors also suggest that the Court should consider the sentences that other judges would impose under similar facts. Since every sentence must begin with the Guidelines, it is safe to assume that the sentences in other Courts would often adhere to the advisory Guidelines. After all, those Guidelines are designed for the typical, or "heartland," case in mind. Accordingly, the Court should impose a Guidelines sentence.

F. The Need to Avoid Unwarranted Sentencing Disparity Among Defendants With Similar Records With Similar Conduct (18 U.S.C. § 3553(a)(6))

Section 3553(a)(6) requires the Court to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. The government submits that it would be instructive to discuss some of the white collar sentences imposed in this district. From these cases, it is clear that the defendant deserves a significant custodial sentence.

Among cases from this courthouse, in United States v. Steven Meszaros, 06-CR-503 (Bianco, J.), the defendant defrauded five investors out of approximately $6 million in two separate schemes. After a trial, Judge Bianco sentenced the defendant to 151 months of incarceration.

In United States v. Helen Michel, 07-CR-889 (Bianco, J.), the defendant defrauded Medicare of approximately $5 million. After a trial, Judge Bianco sentenced the defendant to 144 months of incarceration.

In United States v. Mehdi Gabayzadeh, 03-CR-00162 (Seybert, J.), the defendant engineered a $64 million accounting fraud. After a trial, Judge Seybert sentenced the defendant, an older man in failing health, to 15 years of incarceration.

In United States v. Emerson Corsey, John Juncal, Rodney Sampson and James Campbell, 06-CR-264 (Feuerstein, J.), the defendants tried to defraud a hedge fund, which was actually a cooperating witness, of $3 billion. Since it was a sting, there was no actual loss. Judge Feuerstein sentenced the defendants to sentences ranging from 15 to 20 years.

In United States v. Irina Shelikhova, 10-CR-771 (Gershon, J.), the defendant was the mastermind of a $70 million Medicare kickback fraud. In that case, Judge Gershon sentenced the defendant to 15 years after a guilty plea. Similarly, in United States v. Gustave

Drivas, 10-CR-771 (Gershon, J), Judge Gershon sentenced a "no show" doctor who took part in same fraud referenced above to 12 ½ years after a plea.

In United States v. Stinn, 07-CR-113 (Gershon, J.) the defendant falsified financial statements and Judge Gershon sentenced the defendant to 12 years after a trial.

In United States v. Elgindy, 04-CR-652 (Dearie, J.), the defendant made an insider trading gain of approximately $2.5 million. After a trial, Judge Dearie sentenced the defendant to a term of incarceration of 11 years because of the defendant's psychiatric issues, mistreatment in jail and family circumstances. Significantly, the defendant has no such mitigating issues, and his crimes are more egregious.

In United States v. Santiago Ramirez, 12-CR-579 (Seybert, J.), a defendant committed food stamp fraud, over the course of less than two years. The only victim was the government and the loss was less than $500,000. Judge Seybert sentenced the defendant to 8 years of incarceration.

In United States v. Bannon, et al., 12-CR-471 (Garaufis, J.), the defendants Thomas Bannon and Theodore Sweeten defrauded a sole investor of $5 million in an advance fee scheme. Both defendants pleaded guilty. Judge Garaufis sentenced Bannon to 57 months' imprisonment while Sweeten was sentenced to 48 months' imprisonment.

In United States v. Okhio, 12-CR-179 (Mauskopf, J.), the defendant Telson Okhio, an investment adviser who stole $1 million from one victim, pleaded guilty to one count of wire fraud. Judge Mauskopf sentenced the 52-year-old Okhio to a Guidelines sentence of 46 months' imprisonment.

In United States v. Regan, 09-CR-370 (Amon, J.), the defendant Michael Regan, an investment pool manager, orchestrated a $9 million Ponzi scheme that impacted more than 70 investors. The defendant waived indictment, pleaded guilty, and Chief Judge Amon sentenced him to 7 years' imprisonment.

In United States v. Diaz, 14-CR-133 (Spatt, J.), the defendant Robert Diaz participated in a scheme to defraud the United States causing the United States to lose approximately $450,000. Diaz pleaded guilty, and was sentenced to a 24 months' imprisonment (a sentence at the low end of the Guidelines).

In United States v. Efrosman, 06-CR-095 (Garaufis, J.), the defendant Aleksander Efrosman, the investment manager of Century Maxim Fund, Inc., and AJR Capital, Inc., defrauded more than 100 investors of more than $5 million. Efrosman pleaded guilty and Judge Garaufis sentenced him to 188 months' imprisonment.

Because, as set forth above, the government's recommendation falls squarely within the range of sentences imposed in this district for financial crimes, the Court should impose a Guidelines sentence of 37 to 46 months.

## CONCLUSION

In sum, the defendant is an intelligent man who was raised by loving parents in a middle-class home with every opportunity to lead a law abiding productive life. Instead, he elected to run a Ponzi scheme. He elected to lie to investors day after day, month after month, year after year for more than five years. He elected to take advantage of innocent, unsuspecting victims who placed their trust in him. And for what? So that he could make money. The lies that the defendant sold to investors inflicted ruinous financial consequences upon honest hard-working people. All because of the defendant's actions. For these reasons, and for all the reasons set forth above, the government respectfully submits that a sentence within the advisory Guidelines range of 37 to 46 months is sufficient, but not greater than necessary to serve the mandates of Section 3553(a).

Respectfully submitted,

BREON PEACE
United States Attorney

By: \_\_\_\_/s/\_\_\_\_
Mark E. Misorek
Assistant U.S. Attorney
Matthew P. Sotirhos
Special Assistant U.S. Attorney

Encls.

cc: Robert P. LaRusso (Via ECF and Email)
Jennifer Baumann, United States Department of Probation (Via Email)